IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| STEPHANIE ROSALES, on behalf of herself and others similarly situated, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 3:18-CV-00356-B |
| EQUINOX HOLDINGS, INC., | § § | |
| Defendant. | § | |

**PLAINTIFFS' REPLY IN SUPPORT OF FIRST STAGE MOTION FOR NOTICE TO POTENTIAL PLAINTIFFS & CONDITIONAL CERTIFICATION**

**I.  The lenient first-stage burden is appropriate in this case, but the plaintiffs have satisfied even the higher evidentiary burden urged by the defendant.**

Although the Court has discretion require plaintiffs to satisfy a higher evidentiary standard than the typically lenient burden articulated in *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987), where the parties have engaged in "substantial discovery," the lenient first-stage burden would be appropriate in this case because the parties have engaged in only limited discovery and the defendant has failed to produce many responsive documents or interrogatory answers.[1] *See Coca v. Big Bang Enters, Inc.*, 2015 WL 12532479, at *8 (S.D. Tex. Apr. 14, 2015). However, even if the Court decides to apply the intermediate evidentiary standard urged by the defendant, the evidence submitted by the parties related to plaintiffs' motion is sufficient to satisfy either evidentiary standard. "Courts have not established the precise quantity of evidence required in such cases, but typically, plaintiffs must rely on something more than his or her own allegations and declarations." *Id.* Here, the plaintiffs rely not merely on their pleadings and declarations;

---

[1] Plaintiffs' counsel conferred with defendant's counsel on or about April 4, 2019, regarding plaintiffs' forthcoming motion to compel and has agreed to further confer with defendant's counsel by April 19, 2019, before filing a motion to compel.

Motion for Notice to Potential Plaintiffs & Conditional Certification                                                                 Page 1

instead, plaintiffs' claims are supported by the deposition testimony of Stephanie Rosales and Guy Seaman, the declarations of each plaintiff, defendant's payroll, training, and policy records, and the declaration of Michael Laird, as set forth more fully below. "Evidence of similar job duties and a single policy which violates the FLSA is sufficient to find putative class members similarly situated." *Id.* The evidence establishes that putative class members are similarly situated because they had similar job duties and were affected by the same policies in violation of the FLSA.

## II.  Equinox personal trainers are similarly situated, regardless of geographic location.

### A. All personal trainers had similar job duties.

The Laird declaration summarizes the job description of personal trainers as follows: "Equinox employs Personal Trainers to provide personalized attention, professional instruction, and exercise programming to the Company's members to maximize the members' health, fitness, and wellness goals while providing the highest level of customer service." Def. App. at 155. Defendant's job description for personal trainers includes the same language and additionally lists the "responsibilities" and "qualifications" required of defendant's personal trainers. Def. App. at 204-205.

### B. All personal trainers were affected by the same unlawful policy or practice.

Personal trainers are instructed, beginning with their initial training, that they are expected to "spend as much time as possible in the club." *See* Doc. 25-6. This instruction was reiterated frequently. Rosales testified that her managers "emphasized to stay on the floor, even if we're not on the floor shift, so that we can be a recognized face throughout the club" and "you were obviously instructed to stay at the club as much as you can" Def. App. 33 at 29:8-11, 42 at 38:9-10. She further testified that nobody ever told her that overtime needed to be authorized by management: "No. Quite the opposite. They really emphasized that we stayed at the club as much as we could." Def. App. 59 at 55:18-23. Asked whether there were other occasions when her

managers instructed her to work outside of her floor shifts and personal training sessions, she answered: "Yes. During onboarding and at least the first month working at Equinox, just emphasizing to constantly be at the club." Def. App. 60 at 56:16-22.

Guy Seaman similarly testified about the practice of requiring personal trainers to be present in the gym outside of floor shifts, personal training sessions, and other paid time: "They spoke to us, saying that the gym is like a fishbowl. You must be present more times than not so that you can build your presence in the gym, and that was well known by the managers." Def. App. 111 at 30:21-24. This testimony is also supported by the plaintiffs' declarations, which state that "Defendant required Personal Trainers to work off-the-clock hours each week to attend meetings, prepare training plans for gym members, communicate with gym members, and provide customer service to gym members." *See* Doc. 25-3 at ¶ 2, Doc. 25-4 at ¶ 2, Doc. 25-5 at ¶ 2. Additionally, the personal trainers' compensation for each session increases as they generate more personal training clients and thereby sell more personal training sessions. *See* Def's Response (Doc. 30) at 6; *see also* Def. App. 156 at ¶¶ 17-18. This focus on "productivity" necessarily encourages personal trainers to work off-the-clock to generate clients.

The defendant argues that the plaintiffs' testimony and declarations can only support the conclusion that the described unlawful practice existed at defendant's Highland Park location; however, Rosales interviewed and attended training at the Preston Hollow location, alongside personal trainers employed at the Preston Hollow location, and she discussed the defendant's pay practices and facts of this case with at least one personal trainer from the Preston Hollow location and other personal trainers. Def. App. 14 at 10:21-25, 56 at 52:1-14, 63 at 59:9-20; 67 at 63:6-11, 68-69 at 64:9-65:4. Thus, at the very least, the evidence establishes that the practice of requiring personal trainers to be present at the gym while off-the-clock applied to both the Highland Park and Preston Hollow locations.

The additional evidence demonstrates the nationwide scope of defendant's FLSA violations affecting personal trainers. For instance, the Laird declaration states that defendant's personal trainers clock in for "floor hours, EFTI, mentor responsibilities, monthly PT Forums, one-on-one meetings with managers, and 'special events'" and track their "personal training sessions, complimentary personal training sessions, and Equifits" by logging "vouchers" in defendant's "application on the Personal Trainers' phones and tablets." Def. App. 157 at ¶ 20. Notably, this description excludes any explanation for how defendant tracks the additional time personal trainers are instructed to spend at the gym for the purpose of being present and visible to members to sell personal training sessions. This description also excludes the "session related activities" although defendant maintains that the flat rate paid for the personal training sessions "includes activities associated with the session that may be performed before, during, or after the actual training session." *See* Def's Response (Doc. 30) at 6. In other words, although defendant now claims that its policies required employees to track all of their time, defendant's time keeping system did not allow personal trainers to track all of their time and defendant knew that personal trainers were working off-the-clock.

Defendant concedes that each personal training session recorded is a "one hour, one-on-one personal training session" and the compensation rate paid for each one hour session provided by a personal trainer depends upon the personal trainer's experience level and productivity. *Id.* The Laird declaration characterizes this compensation as a "commission." *See* Def. App. 156 at ¶ 16. And the defendant's pay records demonstrate that Rosales was paid a "PT Commission" based on the number of "PT Sessions" reflected in her pay records. *See* Doc. 25-7.[2] This form of compensation, however, is not properly characterized as a commission. *See Casanova v. Gold's*

---

[2] Laird explains that personal trainers' "compensation is calculated by combining their hourly ages, flat rates for set activities (e.g., Equifits, complementary training sessions, and purchased training sessions), and productivity bonuses." Def. App. 156 at ¶ 17.

*Texas Holdings Group, Inc.*, 2016 WL 1241548, at *8 (W.D. Tex. Mar. 23, 2016). This "compensation system [is] not decoupled from time" because personal trainers can only earn their compensation for the one hour session "upon spending an hour with the client during the actual training session." *Id.* "Such a compensation system reflects nothing more than an hourly wage, where the employee's rate of pay changes based upon his or her qualifications. This is not a commission." *Id.*; *see also Alvarado v. Corp. Cleaning Svc, Inc.*, 782 F.3d 365, 368 (7th Cir. 2015).

Defendant's pay records further demonstrate that Rosales worked "on-the-clock" overtime hours without receiving compensation for overtime premiums. *See* Doc. 25-7. These records show that in the two-week pay period ending May 27, 2017, Rosales worked 70 hours at her $8 per hour floor shift rate and at least 28[3] additional hours providing personal training sessions (not including the additional session-related activities), so she worked at least 18 overtime hours in that pay period without any overtime premium. *Id.* In the following pay period, Rosales worked 51.5 hours at her $8 per hour floor shift rate and at least 31 additional personal training hours, resulting in at least 2.5 overtime hours, without receiving any overtime premium. *Id.* In the following pay period, Rosales worked 51.38 hours at her $8 per hour floor shift rate and at least 50.5 additional personal training hours, resulting in at least 21.88 overtime hours, without receiving any overtime premium. *Id.* In the following pay period, Rosales worked 35.6 hours at her $8 per hour floor shift rate and at least 60 additional personal training hours, resulting in at least 15.6 overtime hours, without receiving any overtime premium. *Id.* These paychecks were issued by defendant's corporate office in New York, not defendant's Dallas location, so the Court can reasonably infer that it was the

---

[3] Personal trainers could provide full sessions or half sessions; full sessions lasted one hour. *See* Def. App. 121 at 40:1-8.

defendant's corporate policy or practice not to pay its personal trainers overtime premiums for on-the-clock overtime worked.[4]

### C. Defendant's alleged written policies do not negate the evidence establishing that personal trainers were affected by policies and practices that violated the FLSA.

Defendant's reliance on *Brumbelow v. Quality Mills, Inc.* is misplaced because the *Brumbelow* court specified that its opinion was based "[o]n the narrow facts of [that] case," where the employee worked from home and under-reported her hours without any indication that the employer encouraged her to do so or "knew or should have known that" she worked more hours than she reported. 462 F.2d 1324, 1327 (5th Cir. 1972).

In contrast, the evidence in this case establishes that the defendant both encouraged personal trainers to work off-the-clock and knew that personal trainers in fact worked off-the-clock. Employees did computer-based training at home. *See* Def. App. 22 at 18:11-16, 40 at 36:21-24, 134-135 at 53:21-54:7. Defendant's training classes also included homework assignments. *See* Def. App. 40-41 at 36:21-37:2. Defendant scheduled personal trainers to work floor shifts for two hours at a time with a gap of several hours between them, knowing that the personal trainers remained at the gym working between floor shifts. *See* Def. App. 33 at 29:2-17, 36 at 32:12-20, 39 at 35:11-17. Similarly, the defendant was aware of its personal trainers' training schedules and that they remained at the gym working off-the-clock between sessions. *See* Def. App. 39-40 at 35:18-36:4, 116 at 35:4-11, 123 at 42:3-6. Since personal trainers wore blue shirts during floor shifts, it would have been easy for the defendant to see when they were doing similar work off-the-clock without wearing the blue shirt. *See* Def. App. 42 at 38:2-15. Defendant was also aware that personal trainers gave members complimentary training sessions for which the trainers could not submit vouchers. *See* Def. App. 135 at 54:17-24, 142-143 at 61:9-62:6. And when personal

---

[4] This conclusion is further supported by the fact that defendant characterizes the compensation for personal training sessions as a commission rather than an hourly rate, as set forth above.

trainers complained about their work hours, management pushed them to keep working, reminding them of the income potential from added sales. *See* Def. App. 34 at 30:7-21, 61 at 57:8-15.

Even if the defendant were able to establish that it did not require its personal trainers to work off-the-clock, the defendant at least "suffered or permitted" this off-the-clock work in violation of the FLSA. *See* 29 C.F.R. § 785.11.

> In all such cases it is the duty of the management to exercise its control and see that the work is not performed if it does not want it to be performed. It cannot sit back and accept the benefits without compensating for them. The mere promulgation of a rule against such work is not enough. Management has the power to enforce the rule and must make every effort to do so.

29 C.F.R. § 785.13.

The defendant's reliance on *Lamon v. City of Shawnee, Kan.* is also misplaced. 972 F.2d 1145, 1158 (10th Cir. 1992). That court merely held that the jury could have concluded that the plaintiffs in that case did not perform work in the 15 minutes before their shift started and declined to overturn the defense-verdict. *Id.* at 1158-1159. The other opinions cited by the defendant in support of its argument that the plaintiffs worked off-the-clock as a "result of personal, individual decisions not to comply with Equinox's policies" are similarly distinguishable. *See* Def's Response (Doc. 30) at 19-20. In those cases, the plaintiffs merely appeared for work 15 minutes early or claimed to perform work that the employer could not have known about.[5] Here, the evidence set forth above establishes that the personal trainers routinely worked numerous off-the-clock hours in plain view of management, defendant encouraged its personal trainers to work off-the-clock hours by instructing them to spend as much time as possible at the gym and tying their compensation to their sales, defendant scheduled its personal trainers to be present at various times in the same day with long gaps of time between scheduled shifts, defendant's timekeeping system

---

[5] *See Lindow v. United States*, 738 F.2d 1057, 1061 n.3 (9th Cir. 1984); *Cherup v. Pittsburgh Plate Glass Co.*, 350 F. Supp. 386, 391 (W.D.W.Va. 1972); *Wood v. Mid-America Mgmt. Corp.*, 192 F. App'x 378, 380-81 (6th Cir. 2006).

did not allow personal trainers to account for all of their time worked, and defendant clearly knew or should have known that its personal trainers were working off-the-clock hours. Additionally, the evidence establishes that the defendant classified the compensation for personal training sessions as commissions and failed to pay its personal trainers overtime premiums even when they worked on-the-clock overtime.

### D. Conditional certification is appropriate even if damage calculations will be individualized.

"[C]ourts within the Fifth Circuit routinely grant conditional certification in § 216(b) cases where facts indicate the need for individualized damages." *Coca*, 2015 WL 12532479, at *9. The fact that at least some of the damage calculations will be based on off-the-clock hours is also an inappropriate reason to deny conditional certification because "well-settled Supreme Court precedent provides that Plaintiffs should not be penalized for Defendants' failure to keep track of Plaintiffs' hours." *Id.* at *10 (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88 (1946)). It is, after all, the employer's burden to maintain records in compliance with the FLSA and the plaintiffs are entitled to provide a reasonable estimate of their hours worked if the employer failed to keep such records. *See, e.g., Anderson*, 328 U.S. at 687-88.[6]

### E. Plaintiffs have established that similarly situated employees exist who should receive notice of this case and an opportunity to opt-in.

---

[6] Ironically, the defendant first acknowledges that Rosales and Seaman both provided estimates of their average overtime hours during their depositions, and later claims that "there is no way to reconstruct the alleged off-the-clock time or unpaid overtime to any degree of reasonable certainty" because, according to the defendant, "Rosales and Seaman admit that they cannot recall how many off-the-clock hours they worked in any workweeks" and there is no record of that time. *See* Def's Response (Doc. 30) at 23 & 25-26. These claims are irreconcilable. The reality is that both Rosales and Seaman provided consistent and reasonable estimates of their hours worked. *See* Def. App. 64-65 at 60:8-61:5 (Rosales estimates that she worked up to 80 hours per week with an average of 55), 114 at 33:1-4, 125 at 44:5-16, 146 at 65:16-23 (Seaman estimates that he worked between 55 and 75 hours per week). And they both testified about their usual work schedules. *See* Def. App. 65-66 at 61:20-62:5, 125-126 at 44:25-45:4, 126-127 45:15-46:4.

"A court may deny a Plaintiff's right to proceed collectively only if the action arises from circumstances purely personal to the Plaintiff, and not from any generally applicable rule, policy, or practice." *Donohue v. Francis Services, Inc.*, 2004 WL 1161366 (E.D. La. May 24, 2004) (citations omitted). Courts consider across-the-board decisions to treat a discrete category of employees as not eligible for overtime as sufficient to warrant conditional certification and Notice to all those performing the same or similar work. *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1264 (11th Cir. 2008) ("There is nothing unfair about litigating a single corporate decision [to classify employees as exempt] in a single collective action…"); *Patton v. Thompson Corporation*, 364 F. Supp. 2d 263 (E.D.N.Y. 2005) (all employees with the same job title were classified as exempt). The evidence demonstrates that the defendant made such an across-the-board decision when it decided to encourage or require personal trainers to work off-the-clock hours and when it decided not to compensate them for on-the-clock overtime hours in accordance with the FLSA. The plaintiffs have also established that all personal trainers had similar job duties.[7]

Therefore, as set forth above and in plaintiffs' motion (Doc. 25), plaintiffs ask this Court to grant their motion for conditional certification and authorize them to notify potential opt-in plaintiffs of their right to participate in this case. Should the Court find that the evidence is insufficient to support conditional certification of a nationwide collective action, plaintiffs ask the Court to grant their motion for conditional certification with regard to defendant's Dallas, Texas locations (Highland Park and Preston Hollow).

### III.    Plaintiffs' proposed notice is appropriate.

The notice proposed by plaintiffs is appropriate and plaintiffs therefore ask the Court to approve that notice. The heading merely suggests that personal trainers employed by defendant

---

[7] Additionally, Laird's declaration establishes that the defendant employs between 40 and 50 personal trainers at its Highland Park location at any given time and operates 93 fitness centers throughout the United States. Def. App. 153-154 at ¶¶ 4-5.

"may be entitled to unpaid overtime wages." Defendant's proposed heading, in contrast, is uninformative and unlikely to be helpful to potential recipients. It would also be inappropriate to include a full description of the defendant's "position and the defenses it asserts" or to intimidate potential recipients by stating that they may "share in liability for payment of costs" before they ever contact an attorney to discuss their options. This is information they can and should receive from their attorney when they evaluate whether to participate in this case or pursue separate claims.

A 60-day opt-in period is not unreasonably long, and the 30-day opt-in period suggested by the defendant is too short to give potential opt-in plaintiffs a meaningful opportunity to receive the notice and evaluate their options. Furthermore, the defendant cannot seriously complain about a mere 30-day delay after contributing to the delay of the consideration of plaintiff's motion over the span of several months. *See* Doc. 19, Doc. 23, Doc. 26. Assuming the defendant's concern about delay is genuine, it is curious that the defendant simultaneously opposes alternative methods of notice (by email and office posting, for instance) which are far more efficient than the mail system and asks the Court to double defendant's time to provide a list of putative class members.

Respectfully Submitted:

By: */s/ Corinna Chandler*
    Corinna Chandler
    Texas Bar No. 24061272
    Chandler Law, P.C.
    3419 Westminster #343G
    Dallas, Texas 75205
    972-342-8793
    972-692-5220 (fax)
    chandler@chandlerlawpc.com

**CERTIFICATE OF SERVICE**

I hereby certify that I have served or caused the foregoing to be served on all counsel of record via the Court's CM/ECF system on this 11th day of April 2019.

*/s/ Corinna Chandler*