UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| STEPHANIE ROSALES, on behalf of herself and others similarly situated, | § § § § § | |
| Plaintiff, | | |
| v. | § § | CIVIL ACTION NO. 3:18-CV-0356-B |
| EQUINOX HOLDINGS, INC., | § § § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff's Motion for Conditional Certification of FLSA Collective Action and for Issuance of Notice. Doc. 25, Mot. For the following reasons, the Court **GRANTS IN PART and DENIES IN PART** the motion as described below.

## I.

## BACKGROUND[1]

This is a Fair Labor Standards Act (FLSA) case brought by Stephanie Rosales, on behalf of herself and all other similarly situated employees, against Equinox Holdings, Inc., her former employer. Rosales, a personal trainer and former employee at the gym Equinox, seeks unpaid wages for off-the-clock and overtime work. Doc. 1, Compl., ¶ 2.

As part of her suit to recover unpaid wages, Rosales now seeks conditional certification. Specifically, she seeks nationwide certification for a class of personal trainers who allegedly were paid

---

[1] The Court draws its factual account from the allegations contained in the Complaint and from the parties' briefing on the Motion for Conditional Certification. Contested facts will be noted as such.

- 1 -

in violation of the FLSA. Doc. 34, Rosales's Reply, 9. Equinox maintains 93 gyms across the United States, and additional gyms internationally. Doc. 31, Equinox's App., 153 (Laird Decl.), ¶ 4. In Dallas, there are two gyms—one in Highland Park and one in Preston Hollow. Rosales worked at the Highland Park location from approximately March 2017 through December 2017. Doc. 1, Compl., ¶ 17; Doc. 25-7, Ex. G. She visited the Preston Hollow location for an initial group interview and for occasional employee training, but did not work at that location. Doc. 31, Equinox's App., 14 at 10:21-25 & 56 at 52:1-53:12 (Rosales Dep.).

Rosales filed suit on February 13, 2018. Since then, two opt-in plaintiffs have consented to join in Rosales's suit: Kendall Harper and Guy Seaman. Doc. 15, Notice of Consent. Like Rosales, Seaman also worked at the Highland Park location and only once visited the Preston Hollow location for an employee training class. Doc. 31, Equinox's App., 131 at 50:1-17 (Seaman Dep.). Harper, another personal trainer, submitted a form notice of consent, but it is unclear where he worked. Doc. 25-5, Ex. E (Harper Decl.). Together, they allege that Equinox has a policy of demanding off-the-clock hours, and a compensation scheme that does not comply with FLSA's overtime requirements. Doc. 25, Mot., 1.

Some discovery was conducted before Rosales filed her Motion for Conditional Certification on February 28, 2019. Depositions of both Rosales and Seaman have been taken, and documents have been produced by both sides, a number of which Equinox attached to its response to Rosales's motion. *See* Doc. 30, Equinox's Resp., 12 (describing discovery already conducted). Rosales replied on April 11, 2019; thus the motion is ripe for review.

## II.

## LEGAL STANDARD

Section 216(b) of the FLSA "authorizes a plaintiff to bring a collective action on behalf of similarly situated persons, provided that any person who desires to become a part of the collective action files a written consent in the court." *Valcho v. Dall. Cty. Hosp. Dist.*, 574 F. Supp. 2d 618, 621 (N.D. Tex. 2008). When a plaintiff seeks to bring a collective action, district courts have the discretion to implement § 216(b) by facilitating notice to potential plaintiffs. *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989).

The FLSA authorizes a plaintiff to bring an action on behalf of similarly situated persons, but the FLSA does not define "similarly situated." And the Fifth Circuit has declined to adopt any specific test to determine when plaintiffs are similarly situated. *Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 519 n.1 (5th Cir. 2010). But district courts in the Northern District of Texas have adopted the two-step approach outlined in *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987), which consists of a notice stage and a decertification stage. *See, e.g.*, *Ecoquij-Tzep v. Hawaiian Grill*, 2017 WL 2672328, at *2 (N.D. Tex. June 21, 2017).

Under the *Lusardi* approach, the first step—the notice stage—requires a preliminary determination, usually based only on the pleadings and submitted affidavits, of whether potential class members are similarly situated to the named plaintiff. *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213–14 (5th Cir. 1995). If they are similarly situated, then the court can conditionally certify the action and authorize notice to potential plaintiffs to opt in, and the suit "proceeds as a representative action throughout discovery." *Id.* at 1214. After discovery is largely complete, the defendant may move for decertification, at which point the court proceeds to the second step—the

decertification stage—and considers again whether the plaintiffs are similarly situated. *Id.* If the court finds that the plaintiffs who opted in are not similarly situated with the named plaintiff, then the class is decertified, the opt-in plaintiffs are dismissed without prejudice, and the original named plaintiff proceeds to trial on her individual claims. *Id.* at 1213–14.

At the notice stage, a court usually has minimal evidence, so "the determination is made using a fairly lenient standard and typically results in conditional certification of a representative class." *Jones v. SuperMedia Inc.*, 281 F.R.D. 282, 287 (N.D. Tex. 2012). Courts generally "require nothing more than substantial allegations that the putative class members were together victims of a single decision, policy, or plan." *Mooney*, 54 F.3d at 1214 n.8. A factual basis, however, must exist, and a plaintiff must show some "identifiable facts or legal nexus that binds the claims so that hearing the cases together promotes judicial efficiency." *Jones*, 281 F.R.D. at 287. In conducting its analysis, the court has "a responsibility to avoid the 'stirring up' of litigation through unwarranted solicitation." *Valcho*, 574 F. Supp. 2d at 622.

Courts do not often engage in the second step—the decertification process—until after "discovery is largely complete and the matter is ready for trial. At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question." *Mooney*, 54 F.3d at 1214. But there are circumstances in which courts will skip the first, lenient analysis. For example, if parties have already conducted discovery on the certification issue, courts have less cause for leniency during the "notice" phase and may choose to apply a more stringent standard. *Valcho*, 574 F. Supp. 2d at 622; *Basco v. Wal-Mart Stores, Inc.*, 2004 WL 1497709, at *4 (E.D. La. July 2, 2004) ("[I]n light of the substantial discovery that has occurred in this matter, the Court will consider the criteria for both the first and second steps in deciding

whether it should certify [the] matter.").

## III.

## ANALYSIS

*A.    Conditional Certification Standard*

Before deciding whether the potential plaintiffs are similarly situated, the Court first must decide whether to skip the lenient standard and apply the stringent standard as the parties have completed some discovery. *See Mooney*, 54 F.3d at 1214. So far,

> [t]he parties have exchanged and responded to written discovery requests, including producing more than 700 pages of documents (roughly 429 from Equinox and almost 300 from Rosales and the opt-in Plaintiffs.) Equinox has responded to interrogatories, requests for production, and requests for admissions, and Plaintiff and the opt-in Plaintiffs have responded to requests for production. Additionally, Equinox has deposed Plaintiff and opt-in Plaintiff Seaman.

Doc. 31, Equinox's App., 3 ¶ 5 (Parker Decl.). Although Rosales states that Equinox "has failed to produce many responsive documents or interrogatory answers," she does not specify what evidence is missing, and what, if any, substantive bearing this would have on her claims other than to alter the applicable standard. Doc. 34, Rosales's Reply, 1. She simply argues that because "the parties have engaged in only limited discovery" and Equinox has not responded to all of its discovery requests, the lenient standard should apply. *Id.* However, she also asserts that she can satisfy the more stringent standard urged by Equinox. *Id.*

Reviewing the facts, the Court concludes that the more stringent standard should apply. Discovery closes in less than two months, on June 17, 2019. Doc. 17, Revised Scheduling Order. There has been more discovery here than in cases applying the lenient standard, like *Hernandez v. Robert Dering Constr., LLC,* 191 F. Supp. 3d 675, 682 (S.D. Tex. 2016), in which the parties took no

depositions, and *Williams v. Grayco Cable Servs.*, 187 F. Supp. 3d 760, 766 (S.D. Tex. 2016), in which the parties conducted no discovery before certification, and *Clemons v. PHB, Inc.*, 2018 WL 4539116, at *3 (N.D. Tex. Sept. 21, 2018) (Boyle, J.), in which although both named plaintiffs had been deposed, the parties jointly requested additional discovery in part to depose corporate representatives and fact witnesses.

Instead, the amount of discovery in this case is more similar to that in cases applying the more stringent standard, such as *Blake v. Hewlett-Packard Co.*, 2013 WL 3753965, at *5 (S.D. Tex. July 11, 2013), in which the parties conducted several depositions and produced "thousands of pages of documents" within five months, and *Parker v. Silverleaf Resorts, Inc.*, 2017 WL 1550522, at *4 (N.D. Tex. May 1, 2017), in which discovery had "been ongoing for 28 months and . . . included responses to interrogatories, requests for admission, 175 requests for production of documents—involving the production of over 6,000 documents—and depositions of the four named Plaintiffs."

Given the substantial amount of discovery already conducted and no clear lack of additional evidence, the Court concludes that it can "'make an educated decision' as to whether certifying the matter as a collective action would survive the decertification process." *See Parker*, 2017 WL 1550522, at * 6 (citing *Basco*, 2004 WL 1497709, at *4). Thus, the Court applies the more stringent standard, maintaining the two-step *Lusardi* analysis but imposes a "heightened evidentiary standard commensurate with the opportunity to conduct discovery." *See Blake*, 2013 WL 3753965, at *5.

B.   *Whether the Plaintiffs Are Similarly Situated*

At the first stage in the *Lusardi* analysis, courts will conditionally certify if the plaintiff has made "substantial allegations that the putative class members were together victims of a single decision, policy, or plan." *Mooney*, 54 F.3d at 1214 n.8. To make this determination, the Court will

consider whether "(1) there is a reasonable basis for crediting the assertion that aggrieved individuals exist; (2) those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted; and (3) those individuals want to opt in to the lawsuit." *Jones*, 281 F.R.D. at 287; *McKnight*, 756 F. Supp. 2d at 801. "A court may deny a plaintiff's right to proceed collectively only if the action arises from circumstances purely personal to the plaintiff, and not from any generally applicable rule, policy, or practice." *Tolentino v. C & J Spec-Rent Servs. Inc.*, 716 F. Supp. 2d 642, 650 (S.D. Tex. 2010).

As to the first factor, a court considers whether a cognizable FLSA claim has been stated, and whether there are other existing or former employees who performed the same tasks and whom the employer allegedly treated in the same manner. *Id.* at 649.

As to the second factor, a plaintiff "must demonstrate a reasonable basis for believing that a class of similarly situated persons exists." *Hernandez*, 191 F. Supp. 3d at 683. To make this determination, courts consider both similarity in (1) job requirements and (2) pay provisions. *Id.*; *Mason*, 2015 WL 4481233, at *4. The positions of the employees and the named plaintiff need only be similar, not identical. *Valcho*, 574 F. Supp. 2d at 621. Essentially, a sufficient "factual nexus" must exist between the named plaintiff's situation and that of the proposed class members. *Williams*, 187 F. Supp. 3d at 766. With regard to the compensation scheme, "[a] unified plan, policy, or scheme need not be proved at the notice stage; rather, the existence of a plan or policy is probative evidence that similarly situated plaintiffs exist." *McDonald v. Worldpac, Inc.*, 2015 WL 12753533, at *4 (N.D. Tex. Sept. 8, 2015). But "[e]vidence of similar job duties and a single policy which violates the FLSA is sufficient to find putative class members similarly situated." *Williams*, 187 F. Supp. 3d at 767. If "there is no single decision, policy, or plan that affects the [p]laintiffs, the case will have enormous

manageability problems." *Procter v. Allsups Convenience Stores, Inc.*, 250 F.R.D. 278, 281 (N.D. Tex. 2008) (internal quotation marks omitted).

Lastly, although not a statutory requirement, this Court and many others in the Fifth Circuit have required the plaintiff to show a third factor—that other employees desire to opt in. *Clemons*, 2018 WL 4539116, at *6 (citing *Straka v. Methodist Dallas Med. Ctr. Auxiliary*, 2018 WL 1611865, at *3 (N.D. Tex. Apr. 3, 2018) (Boyle, J.)). "[A] district court should satisfy itself that there are other employees . . . who desire to 'opt-in.'" *McKnight*, 756 F. Supp. 2d at 805. Other potential plaintiffs' "interest in joining the litigation is relevant to deciding whether or not to put a defendant employer to the expense and effort of notice to a conditionally certified class of claimants in a collective action." *Id.* "Even when a common owner has only a few small locations, there must be at least some minimal showing that employees at other locations are interested in joining the suit." *Id.*

Here, there are three plaintiffs, two of whom opted in to the suit. These plaintiffs offered personal-training services at the Highland Park location, and had only minimal connection to the Preston Hollow location. All three were personal trainers, governed by the same compensation scheme. Doc. 31, Equinox's App., 211 (Equinox's Personal Trainer Compensation Plan). Any variation in job responsibilities was due to their experience in the field, amount of training, and length of time at Equinox.

All three report being subjected to two policies in violation of the FLSA: (1) being encouraged to work off-the-clock; and (2) underpayment of overtime. Rosales alleges that these policies extended nationwide, to Equinox's 90-plus gyms, or at least beyond the Highland Park location, which employs 40-50 trainers at any given time. *See* Doc. 31, Equinox's App., 154 ¶ 5 (Laird Decl.). But as for the first policy, Rosales's and Seaman's depositions suggest that their

Highland Park managers, not Equinox as an organization, encouraged the policy of underreporting hours. Doc. 31, Equinox's App., 59 at 55:18-25 (Rosales Dep.); *id.* at 111 at 30:21-24 (Seaman Dep.). Employers have a duty to enforce their compensation policies, and may not simply "sit back and accept the benefits" of unpaid work when the violations occurred in plain view of management, as Rosales asserts was the case at Highland Park. *See* 29 C.F.R. § 785.13. Equniox's official policy is that such work was not permitted, and there is insufficient evidence that off-the-clock work was encouraged at any other location. Doc. 31, Equinox's App., 173 (Employee Handbook); *id.* at 157 ¶ 22 (Laird Decl.). Indeed, over one year after filing her complaint, only two individuals have joined and only Highland Park has been identified as their employment location.

Considering this evidence, the Court finds that Rosales has failed to make the minimal showing necessary that the policy of off-the-clock work extends nationwide—or even to the Preston Hollow location—and that individuals at other locations wish to opt-in. *See McKnight*, 756 F. Supp. 2d at 807 (limiting conditional certification to just two of the employer's six locations as the plaintiffs failed to show opt-in interest existed at the other four locations). Thus, the Court will not extend conditional certification to other locations based on this alleged policy.

As for the second policy, it appears that many locations nationwide used the same compensation scheme for all personal trainers. Doc. 31, Equinox's App., 211 (describing the compensation plan for "non-California" markets). Specifically, Equinox would pay a base hourly rate of $8/hour for certain tasks, like assisting customers on the gym floor, racking weights, or handing out towels. *Id.* at 212; *id.* at 43 at 39:2-9 (Rosales Dep.); Doc. 25-7, Ex. G. Compensation for other tasks was ostensibly decoupled from the task's duration, and instead paid on a per-unit basis. Doc. 31, Equinox's App., 211–12. For example, conducting fitness tests for new members or

complimentary training sessions was paid at $15/unit. *Id.* at 214. And no hourly rate was paid when the trainer worked one-on-one with a customer for personal training ("PT sessions")—instead, the trainer would be paid per unit of training she conducted, the value of which depended on the trainer's experience. *Id.* at 212. Equinox offered other bonuses as well. *Id.* at 213–14. The evidence currently before the Court suggests that these per-unit rates were in fact highly coupled to the amount of time the trainer spent with each client. Doc. 31, Equinox's App., 212 (showing that PT session rates varied whether they were "full session" or "half session"); *id.*, 121 at 40:1-8 (Rosales Dep.).

Equinox argues that Rosales's regular rate of pay was the lowest rate she was paid—$8/hr—and that even for those weeks in which she might have worked over forty hours, her compensation still exceeded the overtime that would be required for her $8/hr rate. Doc. 30, Equinox's Resp., 6. But the Court is not convinced that this manner of computing overtime is necessarily correct under the FLSA, or that all potential plaintiffs would have been paid appropriate overtime under Equinox's current compensation scheme. *See, e.g.*, 29 C.F.R. § 778.115 ("Where an employee in a single workweek works at two or more different types of work for which different nonovertime rates of pay (of not less than the applicable minimum wage) have been established, his regular rate for that week is the weighted average of such rates."); *Casanova v. Gold's Texas Holdings Grp., Inc.*, 2016 WL 1241548, at *8 (W.D. Tex. Mar. 23, 2016) (finding at the summary-judgment stage that an almost identical personal-trainer payment scheme was not a commission-based compensation that would be exempt from the FLSA's overtime requirements under 29 U.S.C. § 207(i)). More in-depth briefing—for example, at the summary-judgment stage—would be necessary for the Court to determine this issue definitively. *See Casanova v. Gold's Texas Holdings*

*Grp., Inc.*, 2014 WL 6606573, at *4 (W.D. Tex. Nov. 19, 2014) (declining to rule on the merits of a policy as a matter of law at the conditional certification stage).

Equinox also argues that permitting Rosales's case to continue as a collective action would be unmanageable and judicially inefficient because it would necessarily involve an individualized analysis of each plaintiff's work records. Doc. 30, Equinox's Resp., 22-25. Equinox cites one case, *Johnson v. TGF Precision Haircutters, Inc.*, 2005 WL 1994286 (S.D. Tex. Aug. 17, 2005), in support of this proposition. But in *Johnson*, the court was confronted with potential plaintiffs with a range of positions and compensation schemes—in contrast, here there is only the position of personal trainer, which is governed by a single compensation scheme. *See id.* at *22. Although Equinox's compensation scheme incorporates multiple variables, the same general formula applies to each personal trainer. And as for variations in potential plaintiffs' off-the-clock hours, the Court is confident that a uniform scheme to estimate these hours could be applied such that it would not be unduly burdensome to address these FLSA claims as a collective action.

Thus, any complexities that might arise because of a need to calculate individual rates do not mitigate against limited class certification. And even if the second alleged policy violates the FLSA's overtime rules, Rosales has not shown that there is opt-in interest at any location other than Highland Park, and thus the Court finds no compelling reason to certify the class beyond that location. *See Corcione*, 2014 WL 6388039, at *1 (granting conditional certification where three others opted into the named plaintiff's FLSA suit); *Parker*, 2017 WL 1550522 at *1, 6 & 14 (applying the more stringent standard and allowing conditional certification at limited locations when there were four named plaintiffs and no opt-in plaintiffs more than two years after the initial complaint).

Thus, considering the three factors listed above, the Court **GRANTS** conditional certification with respect to Equinox's Highland Park location only.

IV.

CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Conditional Certification, Doc. 25, is **GRANTED IN PART and DENIED IN PART** as follows:

1. The Court **conditionally certifies** this collective action.

2. The prospective class may include only personal trainers at Equinox's Highland Park location for the past three years from the date of this Order.

3. The Court **ORDERS** Defendants to produce the full names and current or last known addresses of all individuals falling within the above-defined class (Employee Information). Defendant shall provide the Employee Information in an electronic form that can be used by Plaintiff in mailing out the notice. If the information is not stored electronically, Defendant shall provide it in written form. Noticing the prospective class by posting at the job site, e-mailing, or text messaging is not allowed.

4. The Court **ORDERS** Defendants to produce the Employee Information no later than **14 days from the date of this Order.** If Defendant fails to provide the Employee Information by that date, the statute of limitations will be equitably tolled for each day after that deadline that Defendant fails to provide the Employee Information.

5. The Court **ORDERS** the parties to confer and submit an agreed Proposed Notice form and an agreed Proposed Consent to Join form no later than **Friday, May 3, 2019.**

6. The opt-in period will last until **60 days** following the date Defendant produces the Employee Information.

**SO ORDERED.**

**SIGNED: April 19, 2019.**

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE